J-A04033-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| PATRICIA A. DIMITRI | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARCUS DIMITRI | : | |
| | : | |
| Appellant | : | No. 314 EDA 2021 |

Appeal from the Order Entered December 22, 2020
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  No. 2014-09013

BEFORE:  LAZARUS, J., NICHOLS, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED MAY 4, 2022**

M.D. ("Father") appeals from the order finding him in contempt for failing to follow a custody order. Father argues the order was not definite, clear, and specific, he did not act volitionally or with wrongful intent, and the counsel fees did not have evidentiary support. We conclude the trial court did not abuse its discretion and affirm.

Father and P.D. ("Mother") share custody of two minor children, A.D., born July 2004, and C.D., born August 2006. The parties have filed various motions to modify custody and emergency motions since the original 2017 custody order. The most recent custody order was issued in February 2020, and provided for shared physical custody, as follows:

> Mother shall have physical custody of [A.D.] on every other weekend from Friday to Monday at school and overnight on Monday and Tuesday, and Father shall have physical custody of [A.D.] on every other weekend from Friday to Monday and overnight on Wednesday and Thursday.

Custody Order, filed Feb. 11, 2020, at 1-2. On December 3, 2020, Mother filed an emergency petition for contempt. Mother alleged that she had continued to see C.D. per the custody schedule but had not had her custody time with A.D. since November 9, 2020. Father filed an answer claiming that Mother's actions were preventing her contact with A.D.

The court held a Zoom conference on the motion on December 7, 2020, and entered an order directing Father to comply with the February 2020 custody order. The following day, December 8, 2020, the court[1] entered an order requiring Father to comply with the December 7 order, granting Mother make-up custody time, and warning Father of possible contempt sanctions:

> Father shall fully comply with the Court's Order of December 7, 2002 or face sanctions including a finding of contempt and possible incarceration. Mother shall also be granted make-up time for December 7-8, 2020 and any other dates for which Father failed to comply with the custody schedule of 2/11/20.

Order, Dec. 8, 2020.

A week later, on December 15, 2020, Mother filed a third emergency petition for contempt, stating she had still not had her custody time with A.D. That same day, the court[2] ordered that "[p]ending the December 22, 2020 hearing, Father and Mother shall comply with existing custody orders or face sanctions." Order, Dec. 15, 2020. Father filed a response asserting, among

_____

[1] The Honorable Daniel J. Clifford, III is the trial judge in this case, but the Honorable Garrett D. Page entered the order on this emergency motion.

[2] The Honorable Henry S. Hilles, III entered the order on this emergency motion.

other things, that A.D. "is 16 ½ years old and can drive or upon leaving the house, be picked up by friends, etc.," Father does not prevent A.D. from being with his Mother, and Father "has no ability to physically make [A.D.] be with his Mother against [A.D.'s] will." Answer to 3rd Emergency Petition for Contempt, filed Dec. 21, 2020, at ¶ 19.

The trial court summarized the testimony at a December 22, 2020 hearing as follows:

> At the Hearing, Mother testified that she had not really seen [A.D.] since an overnight visit on November 8, 2020.[18] When asked the reason why, she responded that Father was not allowing [A.D.] to go to Mother's residence. In her testimony, Mother recalled one phone call from [A.D.] where he was in a closet, crying, and stating that: "I can't come and see you right now. Dad's upset and I have to listen to what he says or else he's never going to see me again, and he's never going to pay for my school."
>
> > [18] . . . There had been one dinner visit at a restaurant on December 11, 2020 and a two hour time period on the eve of the Hearing. In all, Mother calculated she had missed 19 custodial days.
>
> A series of text messages, admitted as Exhibits to the record, bolstered Mother's testimony wherein [A.D.] indicated that Father would not speak to him ever again and would refuse to pay for his private school tuition if he did go to Mother's residence. Furthermore, the text exchanges clearly demonstrated that [A.D.] did wish to see his Mother but, according to [A.D.], Father was refusing to let him go— not even for Thanksgiving.[22]
>
> > [22] . . . [A.D.] specifically sent Mother numerous texts that stated: "dad said I can't go."; "he said u can't pick me up."; "dad is treating [sic threatening] me and saying that he will leave me and stop paying for my school if I go to your house. . . I obviously want to see you but I am not aloud (sic) ."; and "I wish I could see u." **See** Exhibit "M- 1"

When Mother was questioned about [A.D.'s] whereabouts the night prior to the Hearing, she stated that she saw [A.D.] on December 21, 2020 only briefly, for about 2 hours, before he left to go stay at the home of his girlfriend's parent's. Mother stated that she attempted to text [A.D.] to confirm where he was and told him to come back. According to Mother, [A.D.] stated he was confused as to what "the right thing to do" was because he had been given different information from both Mother and Father. Moreover, [A.D.] had witnessed Father continuously violate the Order believing he also did not have to follow it [].

In his testimony, Father clearly was allowing [A.D.] to go to-and-from staying overnight at his girlfriend's parent's house freely, in lieu of going to Mother's house on her custodial time. Additionally, despite the ongoing behavioral issues [A.D.] was having with school (he was suspended from his current private school for one week due to drug use, having been expelled for drug dealing at his prior private school), Father was allowing him to decide where he was going to be staying during the 3 or 4 nights of Mother's custodial time during each week." Father argued that [A.D.] did not want to go to Mother's house because he felt unsafe. This was contraindicated since [C.D.] was observing the 50/50 schedule, without any issues, and the substance of [A.D.'s] texts to Mother.[29]

> [29] . . . Notably, Father did not object to the authenticity of the texts or, when questioned numerous times by the undersigned, offer any explanation of his own on their content. . . .

Notably, when Father was pressed by the undersigned on exactly what form of discipline he had imposed on [A.D.] for failing to comply with the Court Order, the following exchange occurred:

> THE COURT: I want to know what form of discipline that you've imposed on him for failing to comply with the court order, [Father]. I want to know exactly the form of discipline you've imposed on him for not complying with the order.
>
> THE WITNESS. We took away his Xbox. We took away his phone. He was grounded.

- 4 -

> THE COURT: How long was the Xbox taken away for?
>
> THE WITNESS: That was for the drugs. That was for the drugs.
>
> THE COURT. I want to know exactly what form of discipline you imposed on [A.D.] for not complying with this order and when and for what length of time since November 9th.
>
> THE WITNESS: ***I've been trying to reason with him. I didn't put any discipline. What am I supposed to do?*** [Emphasis added]

It was clear that Father had no problem punishing [A.D.] for his drug related issues, but that he chose not to punish him for failing to comply with the Court Order to see his Mother.

In addition, as Father's testimony continued, it became abundantly clear that Father had no reservation about "turfing" responsibility for [A.D.'s] care and control on Mother's custodial days to somebody else, [A.D.'s] girlfriend's mother, despite knowing very little firsthand about that household.

In short, just since December 7, 2020, Father testified that he had essentially permitted five overnights at [A.D.'s] girlfriend's parent's house, while Mother did not have one. Father simply did not have any interest in controlling [A.D.'s] behavior under the Agreed Order and appeared more focused instead on building his case on the custody modification proceedings he has pending against Mother.

In addition, during the course of the hearing, it was disclosed that Father had once again scheduled therapy for the children with the parent's co-parenting counselor, instead of the very specific instructions in the undersigned's July 20, 2020 Order to resume with Mr. Matika, which the Court found to be a "work-around" and manipulative.

Trial Court Opinion, filed Feb. 26, 2021, at 5-8 ("1925(a) Op.") (footnotes citing record omitted).

The court found Father in contempt of the December 7 and December 8 orders and imposed a sanction of payment of counsel fees and filing costs of $4,396.50, and directed that Father relinquish A.D. to Mother "forthwith." It further ordered that Mother would have custody of both Children until January 11, 2021, except for time during the Christmas holiday. The order provided that if Father did not comply, he would be sanctioned $500 per day until he complied and directed him to surrender himself to the Sheriff's Office for additional proceedings to be conducted on December 30. Father complied with December 22 order and the court cancelled the December 30 hearing.[3] Father filed a timely notice of appeal.

Father raises the following issues:

> 1. May a party be held in contempt of a custody order which does not specify the date on which custody is to take place?
>
> 2. May a party be held in contempt of an order which requires him to control a 17 year old boy who is larger than he is?
>
> 3. May a party be assessed counsel fees where there was no proof offered in support of the necessity or amount of counsel fees?

Father's Br. at 6.[4]

In first two issues, Father challenges the finding of contempt. He argues the order did not make clear which parent had custody when and therefore

---

[3] The trial court also sanctioned Father in the divorce/equitable distribution case between the parties. Father appealed that order, which we address in a separate memorandum filed at docket number 313 EDA 2021.

[4] Mother did not file an appellate brief.

there was doubt in Father's mind as to when Mother's custody period began. He argues that the orders referred back to the February 2020 order, which provided custody on an alternating week schedule. Father maintains there was no way to tell from the order whose custodial week was when and therefore claims Mother failed to show the order was sufficiently clear.

Father next argues that he did not act volitionally or with wrongful intent. He claims he cannot control the acts of his then nearly 17-year-old son and argues that A.D. "simply visited his girlfriend" rather than his Mother or Father. He points out that the trial court thought Father should have imposed discipline, as Father did when A.D. was selling drugs, but argues that the level of offense was not the same. Father claims the transcript shows the court "was not willing to accept anything [Father] had to say, and just did not like his parenting style." *Id.* at 17. He claims the court ignored that Mother also could not control A.D.

We review an order holding a party in contempt for an abuse of discretion. *Harcar v. Harcar*, 982 A.2d 1230, 1234 (Pa.Super. 2009). "The court abuses its discretion if it misapplies the law or exercises its discretion in a manner lacking reason." *Id.* (citation omitted). "Each court is the exclusive judge of contempts against its process. The contempt power is essential to the preservation of the court's authority and prevents the administration of justice from falling into disrepute." *Habjan v. Habjan*, 73 A.3d 630, 637 (Pa.Super. 2013) (quoting *Langendorfer v. Spearman*, 797 A.2d 303, 307 (Pa.Super. 2002)).

"To sustain a finding of civil contempt, the complainant must prove certain distinct elements: (1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent." **Lachat v. Hinchcliffe**, 769 A.2d 481, 489 (Pa.Super. 2001). To be punished for the contempt, the order must have been "definite, clear, specific – leaving no doubt or uncertainty in the mind of the contemnor of the prohibited conduct." **Id.** at 488-89 (quoting **Marian Shop, Inc. v. Baird**, 670 A.2d 671, 673 (Pa.Super. 1996)) (emphasis removed).

Here, the orders were definite, clear, specific, and left no doubt or uncertainty as to the conduct required. The December 7 order directed compliance with the February 2020 order "forthwith." When Father did not bring A.D. on December 7, the court again ordered him to do so on December 8. And, when he again did not comply, the court issued a third order requiring Father to resume the custody schedule. That the February 2020 custody order provided for alternating weeks does not make it indefinite. Indeed, December 7, 2020, and December 8, 2020, were a Monday and a Tuesday, and the February 2020 order explicitly gave Mother overnight custody on Mondays and Tuesdays.

Father next contends that he did not act volitionally and with wrongful intent. The trial court found that Mother established by a preponderance of the evidence that Father acted volitionally or with wrongful intent. It noted

there had been three separate orders since December 7, 2020, directing Father to comply and he repeatedly chose not to. He also chose not to discipline A.D. for A.D.'s alleged refusal to follow the schedule, yet he permitted A.D. to spend nights at his girlfriend's house. Further, the court credited Mother's testimony and the texts from A.D. regarding Father's intent not to comply. The court noted that Father attempted to excuse his behavior, claiming it was not his fault, but then testified he did not do anything when A.D. did not comply with the order. It concluded there was no justification for Father's noncompliance. The court did not find Father's testimony that A.D. did not feel safe at Mother's house credible, citing Mother's testimony and the text messages. The court found that "it was clear that [A.D.] was afraid of Father and his threats of retaliation (and that he truly wanted to see his Mother)." 1925(a) Op. at 16. It further noted that Father's testimony "was belied by the fact that the parties' other child . . . was observing the 50/50 schedule without any issues or concerns over safety." *Id.* The record supports the trial court's findings and it did not abuse its discretion in finding Father acted volitionally and with wrongful intent.

In his final issue, Father claims Mother failed to offer proof of counsel fees. He claims that counsel fees must be proven and no proof was offered. He argues the court awarded fees without holding a hearing, accepted the allegations of the petition for counsel fees, and relied on an affidavit that was not of record. Father states counsel sent the affidavit to the court and to Father but did not file it with the trial court.

Father failed to object at the hearing and failed to raise the issue in the Rule 1925(b) statement and has therefore waived the claim. **See** Pa.R.A.P. 302(a) ("[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal"); Pa.R.A.P. 1925(b)(vii) ("[i]ssues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived"). At the hearing on the contempt petition, the court asked Mother's counsel if he had a certification of counsel fees. N.T., 12/22/2020, at 73. Counsel stated he had it with him and would email it. **Id.** at 73-74. Counsel stated the bill was itemized and pertained solely to the contempt petitions. **Id.** at 74. When issuing its ruling on the record, the court stated Mother was entitled to reimbursement of counsel fees and the court would review the fees following the proceedings and issue an amount. **Id.** Father did not object, to either relying on the certification, although it had not been admitted, or to the lack of a hearing on fees.

Further, in his Rule 1925(b) statement, Father alleged:

> 1. The attorneys fees were excessive, punitive and unwarranted and not related to any actual attorneys fees and unrelated to the facts presented in the petition.
>
> 2. The remedy is overreaching in not being related to the alleged violation.
>
> 3. The remedy is overreaching in not being supported by the proven facts.

Pa.R.A.P. 1925(b) Statement.

Due to the vagueness of Father's Rule 1925(b) statement, the court incorrectly "guessed" at the issues Father was trying to raise. **See** 1925(a)

Op. at 19 (noting the issue that the fees were excessive, punitive, and unwarranted was "'vague' and "[i]f it had to guess, Father may be questioning the sanction of attorney's fees because Father routinely argued . . . that Mother was to blame for [A.D.'s] refusal to see Mother on her custodial days"); *id.* at 21 (finding issue that remedy is overreaching was "vague" and "[i]f the court [was] forced to guess, Father may be arguing that the Order directing him to report to the court for sentencing if he did not comply, was overreaching"). The trial court therefore did not address Father's argument that the award of attorney's fees was not proper because the support was not admitted into the record. Father's issues do not mention that the certification and affidavit were not part of the record or that the court failed to hold a hearing.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/04/2022